UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
NAEEM AHMED,                  )
                              )
        Plaintiff,            )
                              )
        v.                    )        CIVIL ACTION
                              )        NO. 13-13117-WGY
HOSTING.COM and JOHN DOE,     )
                              )
        Defendants.           )
                              )
```

```
                              )
NAEEM AHMED,                  )
                              )
        Plaintiff,            )
                              )
        v.                    )        CIVIL ACTION
                              )        NO 14-10026-WGY
FACEBOOK, INC., JOHN DOE 1,   )
JOHN DOE 2, AND JOHN DOE 3,   )
                              )
        Defendants.           )
                              )
```

YOUNG, D.J.                                      June 27, 2014

MEMORANDUM AND ORDER

## I.    **INTRODUCTION**

Naeem Ahmed ("Ahmed") brings two separate, but similar,

suits against Hosting.com ("Hosting"), Facebook, Inc.

("Facebook"), and four unnamed John Doe defendants

(collectively, "John Does") (with Hosting and Facebook, the

"Defendants") for trademark infringement.  Ahmed alleges that

Hosting and Facebook are responsible for the infringing

activities of the John Does, including the use of the trademarks

"The News International,"[1] "the Jang," and "Geo" (collectively,

"the Marks"), over which Ahmed allegedly has some proprietary

interest. Ahmed further contends that the John Does' infringing

use is causing severe losses and irreparable damage to his

business.

Hosting and Facebook have both moved to dismiss Ahmed's

complaints. They contend that this Court lacks subject matter

jurisdiction and that Ahmed has failed sufficiently to allege a

trademark infringement claim against any defendant.

## A. Procedural Posture

### 1. Hosting[2]

Ahmed filed a complaint with this Court on December 9,

2013. Compl. ("The Hosting Compl."), ECF No. 1. On January 29,

2014, Hosting moved to dismiss Ahmed's complaint pursuant to

Federal Rules of Civil Procedure ("Rule") 12(b)(1), 12(b)(2),

and 12(b)(6) for lack of standing, lack of personal

jurisdiction, and failure to state a claim upon which relief can

be granted. Def.'s Rule 12(b)(1), 12(b)(2) & 12(b)(6) Mot.

---

[1] While the pleadings sometimes refer to this mark just as
"The News," the relevant registration documents term it "The
News International" and this Court will follow the latter
nomenclature.

[2] In this section, the ECF numbers refer to Hosting's case
docket, 13-13117-WGY.

2

Dismiss Pl.'s Compl., ECF No. 15. On the same day, Hosting filed a memorandum and a declaration of its counsel in support of its motion. Mem. Supp. Def.'s Rule 12(b)(1), 12(b)(2) & 12(b)(6) Mot. Dismiss Pl.'s Compl. ("Hosting's Mem."), ECF No. 16.; Decl. Leah W. Feinman Supp. Def.'s Rule 12(b)(1), 12(b)(2) & 12(b)(6) Mot. Dismiss Pl.'s Compl. ("Decl. Feinman"), ECF No. 17.

On February 4, 2014, Ahmed opposed Hosting's motion. Mem. Law Opp'n Def. No. 1's Mot. Dismiss ("Opp'n to Hosting"), ECF No. 20. Hosting replied to Ahmed's opposition on February 24, 2014. Def.'s Reply Br. Supp. Rule 12(b)(1), 12(b)(2) & 12(b)(6) Mot. Dismiss Pl.'s Compl., ECF No. 23. On March 21, 2014, Hosting filed a request for judicial notice of certain United States Patent and Trademark Office ("USPTO") materials, Req. Judicial Notice Supp. Mot. Dismiss, ECF No. 26, to which Ahmed responded on April 3, 2014, Resp. Hosting.com's Req. Judicial Notice Supp. Mot. Dismiss, ECF No. 27.

## 2. **Facebook**[3]

Ahmed filed a complaint with this Court on January 7, 2014. Compl. ("The Facebook Compl."), ECF No. 1. On February 27, 2014, Facebook filed a motion to dismiss Ahmed's complaint pursuant to Rules 12(b)(1) and 12(b)(6) or, alternatively, to have Ahmed file a more definite statement under Rule 12(e).

---

[3] In this section, the ECF numbers refer to Facebook's case docket, 14-10026-WGY.

3

Def. Facebook, Inc.'s Mot. Dismiss Compl. or, Alternative, More Definite Statement, ECF No. 13. On the same day, Facebook filed a memorandum and a declaration of its counsel in support of its motion. Mem. Supp. Facebook., Inc.'s Mot. Dismiss Compl. or, Alternative, More Definite Statement ("Facebook's Mem."), ECF No. 14; Decl. Patrick J. O'Toole, Jr. Supp. Facebook, Inc.'s Mot. Dismiss Compl. or, Alternative, More Definite Statement ("Decl. O'Toole"), ECF No. 15. On March 6, 2014, Ahmed opposed Facebook's motion. Mem. Law Opp'n Def. No. 1's Mot. Dismiss or More Definite Statement ("Opp'n to Facebook"), ECF No. 18. On March 18, 2014, Facebook replied to the opposition. Reply Mem. Law Further Supp. Facebook, Inc.'s Mot. Dismiss Compl. or, Alternative, More Definite Statement, ECF No. 21. On March 25, 2014, Facebook filed a request for judicial notice of two USPTO Office Actions, Req. Judicial Notice Supp. Facebook, Inc.'s Mot. Dismiss or, Alternative, More Definite Statement ("Req. Judicial Notice"), ECF No. 22, to which Ahmed responded on April 3, 2014, Resp. Facebook's Req. Judicial Notice Supp. Mot. Dismiss or, Alternative, More Definite Statement, ECF No. 23.

## B. Facts Alleged

The underlying facts alleged in both cases are strikingly similar, revolving around Ahmed's rights to the purported Marks, and the Defendants' alleged infringement thereof. Hosting is a "cloud computing company that builds and operates high-

4

performance websites for companies." Hosting's Mem. 3. Among the sites Hosting administers and operates is the webpage www.thenews.com.pk, which it operates for Jang, "the largest media company in Pakistan." Id. Jang owns a Pakistani trademark for one of the Marks, which it registered in 1995 and has used on its site since at least January 1998. Id. Jang's contact information is displayed on its webpage. Id. at 4.

Facebook is a social networking company that allows users to communicate by creating Facebook "[p]ages." Facebook's Mem. 5. Several of those Facebook pages, run by three John Does, allegedly use the Marks in which Ahmed claims a proprietary interest. The Facebook Compl. ¶ 1.

Ahmed alleges[4] that the webpage www.thenews.com.pk, administered by Hosting, infringes on the trademark "The News International," which he allegedly owns or licenses. Decl. Feinman, Ex. 8, Cease & Desist Notice (Trademark Infringement) ("Cease & Desist Notice") 1, ECF No. 17-8. Likewise, Ahmed claims the various Facebook pages infringe on all the Marks, which he allegedly owns or exclusively licenses. The Facebook Compl. ¶ 1. On December 1, 2013, Ahmed, through his attorneys, sent Hosting a cease and desist notice under section 512 of the Digital Millennium Copyright Act (the "DMCA") asking Hosting to

---

[4] Unless otherwise noted, Ahmed's allegations and the defendants' replies or responses apply in both actions.

take down the allegedly infringing website. Cease & Desist Notice 1-3. Hosting conducted an investigation of the allegations and responded that the notice was deficient because the ⁷DMCA covers only copyright infringement, not, as alleged here, trademark infringement, and that it would not ask Jang to remove anything from the website. Decl. Feinman, Ex. 9, Email Response Cease & Desist Notice, Dec. 4, 2013, ECF No. 17-9.

The purported "common law and statutory licensee" interest in the Marks which Ahmed referenced in his cease and desist letter allegedly comes from "trademark number[s]" 86/123,789 (for "The News International" mark) and 86/123,767 (for "the Jang" mark). The Facebook Compl. ¶ 15. Although Ahmed labels these as trademarks, actually he is referencing two United States trademark applications, filed by a company named Axact (Pvt) Limited of Pakistan ("Axact"). See Hosting's Mem. 3-4; Decl. O'Toole, Ex. 1, The Jang Mark Appl., ECF No. 15-1; id., Ex. 2, The News International Mark Appl., ECF No. 15-2. Ahmed, however, has alleged no connection between Axact and himself.

After learning of Axact's application, Jang filed suit against Axact in Pakistan, before the High Court of Sindh at Karachi. See Decl. Feinman, Ex. 10, Suit Decl., Permanent Inj., Damages & Rendition Accounts Against Infringement Trademark & Copyrights, ECF No. 17-10. The High Court issued an injunction ordering Axact to refrain from trying to undermine Jang's

6

trademarks. Id., Ex. 11, Order Sheet High Ct. Sindh, Karachi, ECF No. 17-11. On December 27, 2013, News Publication (Pvt) Limited, part of the Jang Group, filed its own trademark applications in the United States for "The News International." Id., Ex. 12, Trademark/Service Mark Appl. 86153145, ECF No. 17-12; id., Ex. 13, Trademark/Service Mark Appl. 86153210, ECF No. 17-13.

On January 15, 2014, Axact assigned to Ahmed the two applications it had filed. The Jang Mark Appl. 2; The News International Mark Appl. 2. On March 13, 2014, the USPTO denied registration for both trademark applications and invited a response. Req. Judicial Notice, Ex. A, United States Patent Trademark Office (USPTO) Office Action (Official Letter) Applicant's Trademark Appl. No. 86123767 ("USPTO Refusal 'The Jang' Mark"), ECF No. 22-1; id., Ex. B, United States Patent Trademark Office (USPTO) Office Action (Official Letter) Applicant's Trademark Appl. No. 86123789 ("USPTO Refusal 'The News International' Mark"), ECF No. 22-2.

## II. ANALYSIS

### A. Standing/Subject Matter Jurisdiction

#### 1. Standard of Review

In order for a court to have jurisdiction to hear the merits of a case, the plaintiff must have standing to bring the matter. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231

(1990), holding modified on other ground by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774 (2004); United States v. AVX Corp., 962 F.2d 108, 113 (1st Cir. 1992). Standing cannot be inferred from declarations in the pleadings but must instead be affirmatively established. FW/PBS, Inc., 493 U.S. at 231. In order to establish standing, the plaintiff must satisfy the court that he or she has suffered a "personal injury fairly traceable to the defendant's allegedly unlawful conduct." Hein v. Freedom From Religion Found., 551 U.S. 587, 598 (2007) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Specifically, in the trademark context, standing to bring suit under the Lanham Act[5] is conferred to those who have an ownership interest in a registered trademark, or, for those with unregistered marks, those who have a reasonable interest that

---

[5] The grounds for jurisdiction here are confusing, but appear to be at least in part based on a federal claim, more specifically on the Lanham Act, especially because Ahmed emphasizes federal registration of the Marks. He also argues, however, a diversity jurisdiction claim, presumably related to Massachusetts law, since no other state is implicated. Under Massachusetts law, however, trademark infringement suits can only lie if the mark is registered in the state, see Jenzabar, Inc. v. Long Bow Grp., Inc., 82 Mass. App. Ct. 648, 654 n.11 (2012), and here there is no evidence of registration in Massachusetts. A diversity action would, therefore, fail for lack of standing under state law, too. Moreover, the state and federal trademark standards are "essentially identical," and thus for these purposes the court can analyze them together. See Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 484 F. Supp. 2d 205, 219 (D. Mass. 2007) (Saylor, J.). In any event, as will be discussed later in this opinion, Ahmed's state law claims cannot lie for subject-matter jurisdictional grounds.

8

could be harmed by infringement. See Quabaug Rubber Co. v. Fabiano Shoe Co., 567 F.2d 154, 160 (1st Cir. 1977); Unleashed Doggy Day Care, LLC v. Petco Animal Supplies Stores, Inc., 828 F. Supp. 2d 384, 390 n.2 (D. Mass. 2010) (O'Toole, J.); see also 15 U.S.C. §§ 1114, 1125(a). Ownership interest, relevant for registered trademarks, has been interpreted to limit standing only to registered owners or exclusive licensees of a trademark. Quabaug Rubber, 567 F.2d at 159-160 (concluding that a party who was neither "registrant" nor "exclusive licensee" had no standing).

## **2. Ahmed Does Not Have Standing to Sue**

Although he does not explicitly reference the statute giving rise to his claims, Ahmed's trademark infringement suit under the Lanham Act can be brought either under 15 U.S.C. section 1114 ("section 1114") for registered marks or 15 U.S.C. section 1125(a) ("section 1125(a)") for unregistered marks. See 15 U.S.C. §§ 1114(1), 1125(a); Unleashed Doggy Day Care, 828 F. Supp. 2d at 390.

### **a. Standing Under Section 1114**

Under section 1114, the allegedly infringed mark must be registered in the USPTO. 15 U.S.C. § 1114 (describing the liability for infringing a "registered mark"). Because the USPTO refused to register the Marks at issue in the present

9

action, they are not "registered" as defined in the Lanham Act. See 15 U.S.C. § 1127 (defining "registered mark" as "a mark registered in the United States Patent and Trademark Office"); see also USPTO Refusal "The Jang" Mark; USPTO Refusal "The News International" Mark. Moreover, the civil remedy in section 1114 is available to the registrant. 15 U.S.C. § 1114. As laid out in the Lanham Act, the term "registrant" includes the assigns of the registration owner. 15 U.S.C. § 1127. Thus, exclusive licensees, as assignees, are also empowered to bring infringement claims under the statute, but non-exclusive licensees are not. Quabaug Rubber, 567 F.2d at 159 n.8.

In his original complaints, Ahmed did not allege he was either the owner or exclusive licensee of the Marks.[6] In the cease and desist notice sent to Hosting, however, as well as in his opposition to the motions to dismiss by both Hosting and Facebook, Ahmed refers to himself as either the owner or exclusive licensee of the Marks. Cease & Desist Notice 1; Opp'n to Hosting 4-6; Opp'n to Facebook 5. The claims of ownership in the United States, however, are based solely on trademark applications filed by Axact (applications 86/123,767 and 86/123,789). See Opp'n to Facebook 5. A trademark application, however, does not by itself confer any ownership rights. See

---

[6] Rather, he terms himself, without elaboration, the "common law and statutory licensee." See The Hosting Compl. ¶ 14; The Facebook Compl. ¶ 15.

10

Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc., 762 F.
Supp. 404, 410 (D. Mass. 1991) (Wolf, J.) (noting that, even
registration, without use, is not enough to acquire trademark
rights, because "[t]he fact that plaintiff procured registration
of its so-called trade-mark does not carry plaintiff over its
difficulty because it is elementary that a trade-mark right is
not acquired by registration.  A right to trade-mark stems from
prior appropriation and use") (quoting Tillamook Cnty. Creamery
Ass'n v. Tillamook Cheese & Dairy Ass'n, 345 F.2d 158, 160 (9th
Cir. 1965), disapproved of on other grounds by Park 'N Fly, Inc.
v. Dollar Park & Fly, Inc., 469 U.S. 189 (1985)); see also
Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S.
315, 322 (1938) (holding that registration of a mark "does not
create any substantive rights in the registrant").

Ahmed fails to describe any relationship whatsoever between
himself and Axact, the entity responsible for the filing of the
applications.  Indeed, in his opposition to Facebook's motion to
dismiss, Ahmed specifically claims to have "no such connection
with any such Pakistani company."  Opp'n to Facebook 4.  Not
only does Ahmed fail to describe the relationship between Axact
and himself, but also he has not alleged any facts to support a
contention that he was the owner of any of the Marks at the time
the lawsuit was filed, that he has used any of the Marks in the
United States, or that he has licensed the Marks.

11

On January 15, 2014, however, Ahmed became the assignee of "the entire interest and the goodwill" in the Marks. Decl. O'Toole, Ex. 4, Trademark Assignment 1, ECF No. 15-4; The Jang Mark Application 3; The News International Mark Appl. 3. The purported assignment, however, was for an interest in applications that were subsequently refused registration, as explained above. See USPTO Refusal "The Jang" Mark; USPTO Refusal "The News International" Mark. Moreover, the purported assignment was filed after the initiation of suits against both Hosting and Facebook, and thus it cannot serve as the basis of jurisdiction. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830-32 (1989) (noting that jurisdiction must be present when complaint is filed); Sentinel Prods. Corp. v. Mobile Chem. Co., No. Civ. A. 98-11782-PBS, 2001 WL 92272, at *7 (D. Mass. Jan 17, 2001) (Saris, J.) (concluding that plaintiff "lacked standing to maintain its patent infringement claim" where assignment of the patent's rights happened after lawsuit was brought, because "parties should possess right before seeking to have them vindicated in court") (quoting, in second quotation, Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 870 (Fed. Cir. 1996)).

Without substantiating factual allegations, Ahmed's mere conclusory, and contradictory, statements that he is the owner or exclusive licensee of the Marks are not enough. See AVX

Corp., 962 F.2d at 115. Thus, because the Marks are not registered and because Ahmed has failed to establish that he was either the owner or exclusive licensee of any of the Marks when the lawsuit was filed, he has no standing to bring suit under section 1114.

## b. Standing Under Section 1125(a)

### i. Reasonable Interest Test

The First Circuit has interpreted section 1125(a) to require that the plaintiff have a "reasonable interest" to be protected and demonstrate a "sufficient nexus between [herself] and the alleged conduct." Quabaug Rubber, 567 F.2d at 160; accord Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F. 2d 6, 11-12 (1st Cir. 1986) ("[T]he dispositive question in determining whether a plaintiff is a proper person to bring a claim under the Lanham Act, is whether the plaintiff has a reasonable interest in being protected . . . . [T]he plaintiff must also show a link or 'nexus' between [herself] and the alleged falsehood."); Shell Co., Ltd., v. Los Frailes Serv. Station, Inc., 596 F. Supp. 2d 193, 203 (D.P.R. 2008) ("To determine standing, courts look to whether a plaintiff has a 'reasonable interest' to protect."). Although reasonable interest is not precisely defined, courts have generally understood it to require some degree of commercial

13

injury to the plaintiff by the alleged infringer. See, e.g.,
Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 696 (2d
Cir. 1994) (holding that plaintiff did not have standing as it
failed to assert facts demonstrating "that it will likely be
damaged by [the defendant]'s conduct"); Dovenmuehle v. Gilldorn
Mortg. Midwest Corp., 871 F.2d 697, 700-01 (7th Cir. 1989)
(finding plaintiffs lacked standing as they did not support
their claims with any facts alleging past or future damage in
commercial activity); Shell Co., Ltd., 596 F. Supp. 2d at 204
(concluding a gasoline distribution network had standing as the
company was "neither remote from the injurious conduct, nor was
the harm suffered . . . an indirect result of [the defendant]'s
actions").

Ahmed fails to establish standing under this standard.
Even assuming Hosting's use of the mark on the internet
establishes use in interstate commerce, Ahmed's interest in the
mark is less clear. Ahmed claims that Hosting's alleged
infringement has caused "irreparable loss and damages to his
business and goodwill gained thereby," Compl. ¶ 25, but he fails
to assert specific facts that establish any causal link between
Hosting's use of the mark and the alleged injury. Ahmed does
not provide information as to the type of business in which he
is engaged, the products and services he offers, and how such
business, products, and services are adversely affected by

14

defendants' use of the trademark. See id.; see also id. ¶ 14.
Furthermore, in order to have a "reasonable interest" the
plaintiff must use the infringed-upon mark in commerce in some
way. See Ahmed v. Twitter, Inc., Civ. No. 14-10025-RGS, Mem. &
Order Twitter' Mot. Dismiss ("The Twitter Order") at *7-8, May
16, 2014, ECF No. 23 (Stearns, J.) (citing Swartz v. Schering-
Plough Corp., 53 F. Supp. 2d 95, 101 (D. Mass. 1999)) ("Without
a relationship to an existing product, [plaintiff] has no
protected trademark in [the asserted mark].") (alteration in
original). Here, Ahmed states he is the "common law and
statutory licensee of the mark," but offers only a trademark
application as proof of his interest in the trademark. Compl.
¶ 14. Trademark applications do not establish a protected
interest in a trademark, nor do they demonstrate use, see The
Twitter Order at *7 ("[T]he lack of current use is fatal to [a]
trademark infringement claim."); Swartz, 53 F. Supp. 2d at 102
("[T]he fact that [plaintiff] recently filed for a trademark
does not establish use."), and therefore Ahmed fails to
demonstrate sufficient evidence of his interest in the mark.[7]
Even if the trademark application were sufficient to establish
standing, the application was registered by a separate company,

---

[7] Moreover, the simple assertion that he has used the mark
"in connection with news publication; broadcasting;
telecommunications; news; entertainment; live shows; comedy,"
Compl. ¶ 14, without any facts in support of such claims, is
insufficient to demonstrate use. See The Twitter Order at *7.

15

Axact, and Ahmed provides no information to demonstrate his connection to Axact. See Hosting's Mem. 3-4. Without stating any factual basis for his claims of the alleged injuries, Ahmed fails to establish a reasonable interest in the mark and, therefore, his standing fails under section 1125(a).

## ii. The Lexmark Test

The Supreme Court may have supplanted the reasonable interest test when it recently adopted a framework within which to analyze standing under section 1125(a). Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1391 (2014) (holding that Lanham Act false advertising standing is analyzed under the zone-of-interests and proximate cause tests). Noting a circuit split over how to address standing, the Supreme Court explicitly rejected what it referred to as "antitrust standing or the [Associated General Contractors] factors," the "categorical test," and the "reasonable interest approach." Id. at 1385, 91 (internal quotation marks omitted) (alteration in original). Instead, the Court held that "a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue" under section 1125(a). Id. at 1391. While the Lexmark case was decided in a false advertising context, see id. at 1385, it is unclear whether the Supreme Court's holding extends to false association claims, as is at issue here. Nonetheless, since

16

Ahmed fails to establish standing under the Lexmark test, as will be shown below, this Court need not resolve the issue here, and assumes without deciding that Lexmark applies in false association claims.

Under Lexmark, standing is determined by a two-step process: a zone of interests inquiry and a proximate cause analysis. Id. at 1391. First, analysis of the zone of interests under section 1125(a) requires the court to employ the "traditional tools of statutory interpretation." Id. at 1387. As the Supreme Court explained in Lexmark, the zone of interests is created by the statute and informed by the Lanham Act's statement of purpose, which is codified at 15 U.S.C. § 1127. See id. at 1388-89. If the plaintiff's interests fit within that statement, then she has standing under section 1125(a). See id. at 1389-90. As the Supreme Court noted, the Lanham Act's thorough statement of purpose leaves little question as to the protected interests under the statute:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair

competition entered into between the United States and foreign nations.

Id. at 1389 (quoting 15 U.S.C. § 1127). Thus, the Lanham Act creates a zone of interests encompassing those who "allege an injury to a commercial interest in reputation or sales." Id. at 1390.

Second, the reviewing court must apply a proximate-cause analysis, as a plaintiff can only have standing under section 1125(a) if their "injuries are proximately caused by violations of the statute." Id. Such cognizable injuries are limited, and the Supreme Court recognized that "the Lanham Act authorizes suit only for commercial injuries," and that plaintiffs must demonstrate "economic or reputational injury." Id. at 1390-91. Proximate cause requires that the "alleged harm . . . is [not] 'too remote' from the defendant's unlawful conduct," and that the "harm alleged has a sufficiently close connection to the conduct the statute prohibits." Id. at 1390.

Under Lexmark analysis, Ahmed does not have standing under section 1125(a). Ahmed's assertion of damage to his business may hint at a commercial interest within section 1125(a)'s zone of interests, however, his claims lack any facts which, taken as true, would substantiate his assertions. As under the First Circuit analysis, Ahmed asserts the legal conclusion of injury, but states no facts establishing either a commercial interest in

the mark or a commercial injury caused by the alleged infringement. "[I]n judging the adequacy of a plaintiff's allegations, 'bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation' carry no weight." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (alteration in original) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990), overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004)). Without stating facts that sufficiently demonstrate a claim arising under section 1125(a), Ahmed does not properly establish standing. A failure to establish standing also prohibits a claim for proximate causation, as Ahmed provides no means by which to assess whether such damage has occurred, and whether the defendants' actions are the proximate cause of the damage. Without pleading facts that assert his claims fall within the zone of interest and demonstrate proximate causation, Ahmed's claims fail to establish standing under the Lexmark test.

### 3. **There is Incomplete Diversity of Citizenship**

In addition to alleging that this Court has subject matter jurisdiction because of the trademark nature of the claim, Ahmed insists further that there is subject matter jurisdiction under 28 U.S.C. section 1332 because there is complete diversity of citizenship. The Hosting Compl. ¶ 8; The Facebook Compl. ¶ 9.

19

In order for Ahmed to establish diversity subject matter jurisdiction, he must affirmatively allege facts concerning the citizenship of every defendant. See Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992) (noting that the party invoking subject matter jurisdiction bears the burden of alleging facts to support the existence of jurisdiction) (quoting James W. Moore et al, Moore's Federal Practice ¶ 0.71[5.-1] (2d ed. 1985)).

Ahmed has failed to carry this burden. As an initial matter, in both suits against Hosting and Facebook, Ahmed alleges claims against four separate John Doe defendants, but fails to bring any information about such defendants. See The Hosting Compl.; The Facebook Compl. Thus, Ahmed has failed sufficiently to allege facts concerning the citizenship of every defendant, a prerequisite for invoking diversity subject matter jurisdiction. See One Commc'ns Corp. v. Sprint Nextel Corp., 495 F. Supp. 2d 219, 223 (D. Mass. 2007) (Stearns, J.) (noting that where subject matter jurisdiction is premised upon diversity, "[c]omplete diversity is required; each plaintiff must be diverse to every defendant for each claim").

Bringing suit against a John Doe, or unnamed party, is permissible "where a good-faith investigation has failed to reveal the identity of the relevant defendant." Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007). That is not

the case here, where even a perfunctory investigation of the allegedly infringing Facebook pages and the website hosted by Hosting readily reveals contact information for the entities responsible for the content. See Decl. Feinman, Ex. 2, The News International Website ("Contact Us Page") 5, ECF No. 17-2; Decl. Toole, Exs. 13-21, Facebook Pages, ECF Nos. 15-13:15-21.

Furthermore, the contact information indicates that the entities running the Facebook pages and the website hosted by Hosting are located in Pakistan. See Facebook Pages; Contact Us Page. The United States Supreme Court has ruled that when both a plaintiff and a defendant are foreign citizens, complete diversity is absent. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 580 n.2 (1999) ("The foreign citizenship of defendant . . . and plaintiff . . . render[s] diversity incomplete."); accord M&I Heat Transfer Prods., Ltd. v. Willke, 131 F. Supp. 2d 256, 260 (D. Mass. 2001) (Lasker, J.) (ruling that, because the plaintiff and the defendants were foreign citizens, there was not complete diversity of citizenship). Thus, because Ahmed and the John Does are both foreign citizens, complete diversity is absent, and thus diversity of citizenship cannot serve as a basis for subject matter jurisdiction here.

Because Ahmed has not established that he has standing to bring the trademark infringement claims and because there is not complete diversity of citizenship to allow the Court to hear any

state-law claims, this Court lacks subject matter jurisdiction and thus must dismiss Ahmed's complaints.[8]

---

[8] In addition to his failure to establish subject matter jurisdiction, Ahmed also seems to be collaterally estopped from arguing his claim against Hosting and Facebook before this Court. The collateral estoppel stems from Judge Stearns's recent decision in Ahmed v. Twitter, Inc., Civ. No. 14-10025-RGS. See The Twitter Order.

Collateral estoppel depends on a showing that "(1) the issue to be precluded is the same as that disputed in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was determined by a valid and binding final judgment or order; and (4) the determination of the issue in the prior proceeding was essential or necessary to the final judgment or order." In re Relafen Antitrust Litig., 286 F. Supp. 2d 56, 65 (D. Mass. 2003)(citing Plumley v. Southern Container, Inc., 303 F.3d 364, 373 (1st Cir. 2002)).

Here, the four requirements seem to be fulfilled. First, the issue to be precluded is essentially the same, revolving around Ahmed's purported rights to the Marks and the alleged infringement by varied defendants. The Twitter Order 1 ("This action is a chapter in a bizarre dispute over the right to certain trademarks that originate from Pakistan. Plaintiff Naeem Ahmed's Complaint alleges infringement of three marks – the JANG, the GEO, and the NEWS – by seven Twitter profile pages."). Second, the issue was litigated in the previous case. There, Judge Stearns observed that Ahmed failed to indicate any past or present use of the Marks, and therefore no trademark infringement could be found. Id. at 7-8. Not only that, Judge Stearns also noted that "Ahmed's allegation of harm also fails for the same reason," to wit, because they are "naked assertions." Id. at 8. Third, because Judge Stearns allowed Twitter's motion and dismissed the case, id., the issue there was determined by a valid and binding final judgment. Fourth, Judge Stearns' determination of the issue was essential to his order, because the latter is entirely predicated on the resolution of the former. See id. 5-8. Accordingly, while this Court does not depend on the collateral estoppel analysis to dismiss the case, it acknowledges that estoppel would also preclude Ahmed from litigating the present case.

Finally, the Court notes that Hosting and Facebook also allege in their motions to dismiss that Ahmed has failed to state a plausible claim, Hosting's Mem. 8; Facebook's Mem. 8, and Hosting further contends that there is no personal

## III.    CONCLUSION

For the foregoing reasons, this Court DISMISSES Ahmed's cases against Hosting and Facebook.

**SO ORDERED.**

William S. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

jurisdiction over them in this Court, Hosting's Mem. 14. Because this Court does not have subject matter jurisdiction to render judgment, it is unnecessary to address these claims.  See Ruhrgas AG, 526 U.S. at 577-78 (ruling that, although "there is no unyielding jurisdictional hierarchy," federal courts ordinarily resolve subject matter jurisdiction issues before personal jurisdiction issues, and jurisdictional issues in general before reaching the merits).  Recently, Judge Zobel ruled against Ahmed in two virtually identical cases on such grounds.  See Ahmed v. Google Inc., No. 13-13129-RWZ, 2014 WL 2615406 (D. Mass. June 12, 2014); Ahmed v. Apple Inc., No. 13-13130, 2014 WL 2615400 (D. Mass. June 12, 2014).